UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

JAMES C. LAYNE, ]
]
    Plaintiff, ]
]
vs. ] CV 97-N-1311-W
]
JIM WALTER RESOURCES, INC. et ]
al., ]
]
    Defendants. ]

## Memorandum of Opinion

### I. Introduction.

The plaintiff, James C. Layne, brings this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, *et seq.* The court presently has for consideration the defendants' motion for summary judgment (Doc. No. 61), filed by Jim Walter Resources, Inc. and Walter Industries, Inc. (collectively referred to as JWR).[1] The motion has been briefed by the parties and is ripe for decision. Upon due consideration, the motion for summary judgment will be granted in all respects.[2]

---

[1] On March 31, 1999, the court granted the defendants' earlier partial summary judgment motion and dismissed the plaintiff's claims that JWR discriminated against him by refusing to employ him at his former position or any other position without accommodation. The court made this determination after finding that the plaintiff's continuous assertions, via acceptance of long term disability benefits, that he is totally unable to work at JWR serve to estop him from claiming he can perform any job at JWR without accommodation. The court also granted summary judgment as to plaintiff's claim of retaliation.

[2] The court also has for consideration the plaintiff's motion to strike (Doc. No. 59), and three motions to strike submitted by the defendants, which have not been separately filed, but which were included in their reply submission (Doc. No. 60). The court has considered these motions contemporaneously with the motion for summary judgment, and has disregarded any portions of the facts and exhibits which were not properly before the court on summary judgment.

## II.     Statement of Facts.[3]

The plaintiff began working for JWR in September of 1985, and worked in mine No. 5 in a management position. He injured his back in a work-related accident in September of 1989 while working as a belt foreman. Mr. Layne was paid his full salary for a period of the first six months he was out of work following his accident. Following that, on January 4, 1990, he applied for and began receiving long-term disability benefits under a plan established by his employer. At the end of the ordinary eighteen-month period for which such benefits were ordinarily paid, Layne applied for and received a continuation of those benefits.

On April 15, 1991, the plaintiff filed a worker's compensation claim against the defendants, claiming he was permanently and totally disabled. In a settlement of that claim, the defendants paid him $110,000.00. Payment of that claim had the effect of suspending his long-term disability benefits for a period of five years. Those benefits were reinstated in June of 1997, and at the time of his deposition in this case on January 22, 1998, Mr. Layne was receiving $1,315.70 per month in long-term disability benefits.

On February 22, 1990, the plaintiff filed an application for Social Security disability benefits and after testifying before an Administrative Law Judge at a hearing, the plaintiff was awarded SSD benefits retroactive to October 4, 1989. The plaintiff was paid SSD

---

[3] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

2

benefits at least through the date of his deposition in this case on January 22, 1998, when he was receiving approximately $1,227.00 per month.

The plaintiff sought employment with JWR in 1994 or 1995 claiming that he was physically capable of performing his previous job as belt foreman. The defendants did not return the plaintiff to his former position, and the plaintiff now asserts that the defendants discriminated against him on the basis of disability.[4]

## III.    Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *otex*,

---

[4] There is a dispute as to whether the plaintiff had indicated that he was willing to take any job available or merely applied for his former position of belt foreman. However, the dispute is immaterial for summary judgment purposes as the plaintiff has maintained throughout his prior proceedings concerning long-term disability benefits, social security benefits, and his worker's compensation claim that he is totally and permanently disabled from performing any gainful activity.

3

477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

4

must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**IV.    Discussion.**

In order to establish a prima facie case of disability discrimination under the ADA, the plaintiff must present evidence sufficient to justify a jury in finding: (1) the plaintiff has a disability as defined by the ADA; (2) he is a "qualified individual" with a disability as defined by the Act; and (3) he was subjected to unlawful discrimination at the hands of his

5

employer because of his disability. *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998); *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996). In order to prove this second element of his prima facie case, the plaintiff must meet the ADA's definition of a "qualified individual." *Morisky*, 80 F.3d at 447. The statute defines a "qualified individual" with a disability as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1).

The concept of reasonable accommodation is crucial to the ADA's scheme. To qualify for a job, the plaintiff need not show that he is able to perform the primary functions of a job in the same manner and on the same terms as can an employee who is not disabled. Instead, the plaintiff can meet his burden by showing that he can perform the essential functions of the job despite his disability, provided his special needs are reasonably accommodated. Importantly, however, "the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997). "[A]n ADA plaintiff (1) as part of [his] burden of production, must identify an accommodation that would allow [him] to perform [his] job duties and (2) as a part of [his] burden of proving [his] case, must establish that such an accommodation is reasonable." *Willis v. Conopco, Inc.*, 108 F.3d 282, 284-86 (11th Cir. 1997).

6

The plaintiff is not, however, limited to the job he previously held in attempting to prove that he could satisfactorily fill a position with the defendant. "Reasonable accommodation may include but is not limited to: . . . (ii) . . . reassignment to a vacant position." 29 C.F.R. § 1630.2(o)(2). Thus, the plaintiff may prove that he is a qualified individual by showing that he is capable of performing a different job with the defendant with an accommodation, even though he cannot perform his former job. However, plaintiff is not allowed to pick just any job he may wish to have. "Reassignment to another position is a required accommodation only if there is a vacant position available for which the employee is otherwise qualified." *Willis*, 108 F.3d at 284; *see also Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1224-25 (11th Cir. 1997) (relying on same regulation and affirming district court holding that transfer to a non-vacant position would not be a reasonable accommodation). Once again, plaintiff bears the burden both of production and persuasion on the reasonable accommodation issue. In a case in which plaintiff seeks a different job as an accommodation, he must establish the existence of an appropriate vacant position in order to make out a *prima facie* case. *See Willis*, 108 F.3d 286.

In this case, JWR argues that the plaintiff is not a qualified individual with a disability as that term is defined by the ADA and, thus, cannot satisfy the second prong of his prima facie case. This, according to the defendants, is because he previously and repeatedly represented that he was totally and permanently disabled in proceedings in which he sought long-term disability benefits from his employer, social security disability benefits, and worker's compensation benefits. Accordingly, the defendants argue, the plaintiff is

7

now estopped to assert that he is qualified and able to perform the essential functions of a job with the defendants with reasonable accommodations.

In a recent decision, the United States Supreme Court held that applying for and receiving social security benefits

> does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA. Nonetheless, an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could "perform the essential functions" of her previous job, at least with "reasonable accommodation."

*Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 119 S. Ct. 1597, 1600, 143 L. Ed. 2d 966 (1999). The Court went on to emphasize that "a plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case–at least if she does not offer a sufficient explanation." *Id.* at 1603. Accordingly, a plaintiff cannot "simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim," *id.*, and the court should require an explanation "[w]hen faced with a plaintiff's previous sworn statement asserting 'total disability' or the like." *Id.* at 1604. Such an explanation "must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of [his] job, with or without 'reasonable accommodation.'" *Id.*

In decisions that preceded the Supreme Cout's decision in *Cleveland,* the Eleventh Circuit laid out its own approach to this issue. *See Talavera v. School Bd. of Palm Beach County,* 129 F.3d 1214, 1220 (11th Cir. 1997); *Taylor v. Food World, Inc.,* 133 F.3d 1419 (11th

8

Cir. 1998). The Eleventh Circuit has disapproved of the indiscriminate use of judicial estoppel to defeat the ADA claim of a plaintiff who certified that she was totally disabled in applying for disability benefits. *See Taylor*, 133 F.3d 1423; *Talavera*, 129 F.3d at 1220. Instead of applying a *per se* estoppel rule to such plaintiffs, courts in this circuit are to consider whether estoppel is warranted based on specific representations in the application for benefits that are in fact inconsistent with a claim that one is a "qualified individual" under the ADA. *See Talavera*, 129 F.3d at 1220. In light of this approach, the Eleventh Circuit has made it clear that a plaintiff is bound by any specific representations made in seeking benefits. "[A]n ADA plaintiff is estopped from denying the truth of any statements made in her disability application" because "an ADA plaintiff should not be permitted to disavow any statements she made in order to obtain . . . benefits." *Id.* Thus, in both *Talavera* and *Taylor* the court declined to estop the plaintiff from going forward with an ADA claim after a highly fact-specific inquiry into the precise representations made in seeking benefits. *Talavera* and *Taylor* are based instead on the premise that, because of the ADA's unique structure, an assertion that a plaintiff is not capable of working under conventional circumstances is not necessarily inconsistent with a claim that the plaintiff is also a "qualified individual" under the ADA. *See Taylor*, 133 F.3d at 1422. In *Talavera*, "[the] court determined that a certification of total disability on a disability benefits application is not inherently inconsistent with being 'qualified' under the ADA. [The] court reasoned that the SSA, in determining whether an individual is entitled to disability benefits, does not take account of the effect of reasonable accommodation." *Taylor*, 133 F.3d at 1423 (citation omitted).

Other courts have spoken to this matter since the *Cleveland* decision. For example, in *Motley v. New Jersey State Police*, No. 97-5715, 1999 WL 985135 (3d Cir. Nov. 1, 1999), the Third Circuit found that a defendant's motion for summary judgment should be granted because of the plaintiff's prior assertions and his inability to reconcile those inconsistencies with his ADA claim. The court held:

> It is difficult to get around the conclusion that, in at least one of the fora, Motley was not completely honest. . . . Nowhere in his application for the disability pension is there any indication that Motley could perform the essential functions of a state trooper, with or without accommodation. "Employers . . . are not required to find another job for an employee who is not qualified for the job he or she was doing."

*Id.* at *5 (*quoting School Bd. Of Nassau County v. Arline* 480 U.S. 273, 289 n.19, 107 S. Ct. 1123, 94 L. Ed. 2d 307 (1987)). In reaching its decision, the court noted that (1) in his application for disability benefits, the plaintiff stated that he was "permanently and totally disabled," which did not involve merely checking a box, but rather was supported with detailed descriptions of his injury and how it impacted adversely his ability to work; (2) the medical board concluded that the plaintiff was permanently incapacitated from his duties, which was uncontested by the plaintiff; and (3) the plaintiff had failed to proffer a reasonable explanation for his inconsistent assertions. *Id.* at *5-6. The court also found that the decision to grant the plaintiff full pension benefit was based on the conclusion that he could not serve as a police officer because of his medical condition, and that this conclusion was directly relevant to his claim that he was discriminated against when he was not promoted: "If Motley could not continue to serve because of his medical condition, it follows that he should not have been promoted for the same reason." *Id.* at *5.

Likewise, in *Mitchell v. Washingtonville Central School District*, 190 F.3d 1 (2d Cir. 1999), the Second Circuit, in citing *Cleveland*, rejected the plaintiff's ADA claim, finding that the plaintiff had argued inconsistent positions in prior proceedings before the Workers' Compensation Board and the Social Security Administration. During those proceedings, the plaintiff argued that he was incapable of standing or walking for any length of time, was in constant pain when he wore his prosthesis, and could only perform sedentary work. These statements, along with medical reports submitted by the plaintiff supporting these statements, were adopted by the ALJ and the workers' compensation judge resulting in determinations in the plaintiff's favor. In the ADA litigation, however, the plaintiff argued that, during that same time period, he was fitted with a new prosthesis which allowed him to stand and walk up to four to five hours a day.[5] The court found that this case involved "conflicting statements about purely factual matters," and that the *Cleveland* Court specifically noted that its "consideration . . . leaves the law related to the former, purely factually, kind of conflict where we found it." *Id.* at *7 (*quoting Cleveland,* 119 S. Ct. at 1601-02).

Finally, in *Gibson v. Wal-Mart Stores, Inc.*, No. 98-5102, 1999 WL 503459 (6th Cir. July 6, 1999), the Sixth Circuit remanded an ADA case in light of *Cleveland*. In *Gibson*, the plaintiff had suffered a mild stroke, but returned to work with a medical release stating he had no restrictions. Wal-Mart believed the plaintiff was unable to perform his duties as before, however, and eventually terminated him. Thereafter, the plaintiff applied for Social

---

[5] The plaintiff in *Mitchell* even had a vocational expert testify in his ADA case that he was able to perform his previous job once he had received the new prosthesis. *Mitchell*, 190 F.3d at 5.

11

Security disability benefits, stating that he was unable to work due to a combination of impairments, but was denied disability benefits on the basis that his condition was not severe. In his ADA case, the plaintiff submitted evidence that he was able to perform all the functions of his previous job and provided a note from his doctor stating he was able to return to full-time work and fulfill all the duties of that job. Although noting that the plaintiff's statement of total disability on his social security application undermined his position that he was able to perform the essential functions of his job, the *Gibson* court remanded the case to provide the plaintiff with an opportunity to explain the inconsistent positions taken by him in the two proceedings. *Id.* at *4.

It is clear from these cases that while a mere application for benefits or general assertion of an inability to work will not automatically estop an ADA plaintiff, specific factual assertions which are inconsistent can and likely will preclude a plaintiff's ADA claim. It is important that the plaintiff actually understands what he is signing and saying, because a mere error or misunderstanding will not be sufficient to bar the later ADA claim. For the same reason, the court should also assess any direct evidence that the plaintiff knew that his assertions were inconsistent or untruthful, and proceeded with them anyway.

In the instant case, the plaintiff made several factual assertions which are directly inconsistent with his present ADA claim and remain unexplained. With this being the case, he cannot survive the defendants' motion for summary judgment.

In January of 1990, the plaintiff completed an application for long-term disability benefits and was awarded benefits on March 31, 1990, on the basis that the plaintiff was "totally disabled from [his] usual occupation according to the terms of [his] group

12

insurance coverage." Movant's initial submission (Doc. No. 57) at Exhibit 7. The plaintiff testified that he understood that he would get the benefits for 18 months as long as he was disabled from his usual occupation. *Id.*, exhibit 1, at 107. The award also explained that to extend these benefits "you must provide objective medical evidence that you are unable to perform any gainful activity for which you are qualified or could become qualified as a result of your education, training or experience." *Id.*, exhibit 7. The plaintiff met this criteria and was awarded extended coverage "as long as [he] remain[s] permanently and totally disabled from performing any reasonable occupation." *Id.*, exhibit 8. The plaintiff testified that he understood the standard he had to meet to continue getting his benefits after 18 months. The plaintiff further testified that at the time of the deposition, he was still covered by the plan and that he would remain covered "as long as he was permanently and totally disabled from performing any reasonable occupation." *Id.*, exhibit 1, at 108, 110. It is undisputed that the plaintiff continued to receive $1,315.70 per month in long-term disability benefits at the time of his deposition.

The plaintiff applied for social security disability benefits on February 22, 1990, and was awarded benefits after a hearing before an ALJ. The ALJ stated in his decision, dated May 6, 1991, that the plaintiff testified at the hearing that "he was no longer able to work," "he suffers from continuous back and leg pain which is not relieved by medication," and has "severe problems with his nerves and depression." *Id.*, exhibit 10, at 3. Accordingly, the ALJ found that the plaintiff had "severe back and leg pain" which "severely restricted" his activities, and awarded the plaintiff benefits. *Id.* at 4. It is undisputed that the plaintiff

continued to receive $1,227.00 a month in social security disability benefits at the time of his deposition.

On April 15, 1991, the plaintiff filed a complaint for worker's compensation benefits in which he stated that he "has a total permanent physical disability and/or Plaintiff has lost the physical ability to perform the work that he was doing on September 27, 1989. Plaintiff is completely and totally disabled and has suffered a total loss of earning capacity over his lifetime due to such disability." *Id.*, exhibit 11. In his worker's compensation lawsuit, the plaintiff hired a vocational expert, who prepared a vocational assessment of the plaintiff. The vocational expert stated that the plaintiff

> complain[ed] of continuous pain . . . which increases with almost any type of physical activity on his part. In addition, he has almost a total loss of feeling in his left leg with accompanying foot drop. He rates his level of pain as being an 8 on a 10-point scale when he has been fairly active and at 5/10 when he does very little to exert himself. He also experiences a high degree of anxiety over his physical condition and his inability to perform any type of gainful work activity. He has contemplated suicide on several occasions but apparently has not gone so far as to make explicit plans for such an event. . . . By his estimate, he can sit for forty-five minutes, stand for fifteen minutes, and walk for about one and one-half miles before the pain becomes so intense that he must change positions or lie down. He does some simple tasks around his home . . . but otherwise spends his time sitting or lying around his home. . . . He spends about five hours per day lying in a recliner, on the couch or in bed. He sleeps poorly at night . . . [and] complains of drowsiness during the day which is very distracting for him and he indicated that he was also having problems with his memory.

*Id.*, exhibit 9, at 3-4.

Based on the plaintiff's testimony, the vocational expert found that the plaintiff "is presently unable to perform any type of work or engage in many of his ordinary activities of daily living because of severe pain and limitation of function." *Id.* at 1. He further

14

determined that, although the plaintiff was an excellent candidate for rehabilitation, such retraining would be "contingent upon his ability to deal with the severe, intractable pain that he currently demonstrates." *Id.* As for returning to his former job, the vocational expert stated that the plaintiff "would certainly be a poor candidate for return to any of the jobs that exist in the mining industry that require underground duties and would most likely find it necessary to seek jobs in less arduous work settings if he were to return to the work force." *Id.* at 2. However, the vocational expert found that because of his severe, intractable pain, the plaintiff "can do very little other than stay at home and attempt to find a comfortable position to sit or lie in" and that his "abilities would be severely compromised . . . by a level of pain which was distracting and which would prevent him from maintaining a normal work day or sustain a typical work week." *Id.* at 4.

Accordingly, the vocational expert determined that "[t]he basic issue in [the plaintiff's] case does not evolve around his ability to find and engage in some type of job but rather whether or not he could sustain work activity with the high level of pain that he describes," and that his "present condition will most likely represent the status that he will be in for the indefinite future and any positive changes are unlikely." *Id.* The vocational expert concluded that the plaintiff "is presently unable to perform any type of gainful work on a sustained basis that currently exists in the economy and that his condition is unlikely to change appreciably in the future." *Id.* at 5. As noted above, the defendants settled the plaintiff's worker's compensation lawsuit for a lumpsum payment of $110,000.00. *Id.*, exhibit 12.

It is clear that many of the representations made by the plaintiff were made directly by him and in his own words–lending support to the idea that the claimant understood the meaning and import of those words. Mr. Layne's understanding of his words and their import is entirely inconsistent with his current argument that he is able to perform the essential functions of his past work, or any work, with the defendants. Moreover, even plaintiff's general assertions have a core meaning which the court can assume the plaintiff understood in light of the other more specific statements made by the plaintiff.[6] The plaintiff's present claim that he can go back to work for the defendants is clearly inconsistent with his previous assertions of being "permanently and totally disabled" and "unable to perform any gainful activity" under the defendants' long-term disability plan. It is likewise in conflict with his prior claims before the ALJ for social security purposes that "he was no longer able to work" and that "he suffers from continuous back and leg pain which is not relieved by medication." Finally, plaintiff's prior representations in his worker's compensation suit that he is in continual pain to such an extent that he cannot do anything besides lay around the house and thus is not only excluded from jobs in the mining industry but also *any* gainful activity, are clearly inconsistent with his ADA claims. It is also noteworthy that the conclusion drawn in the worker's compensation case was that the plaintiff's condition was unlikely to change in the future.

Mr. Layne has proffered no explanation that would reconcile his previous statements related to his long-term disability benefits, social security disability benefits, and worker's

---

[6] The court finds that the handling of these generic allegations simply requires more care to assure that in a particular case the claimant is held only to what he understood the language to mean, and not what lawyers understand it to mean.

16

compensation claim, with his present assertion under the ADA that he can return to work with reasonable accommodations. The plaintiff testified that he had no knowledge of his doctors providing any information to the defendants that he is now able to work. Movant's initial submission (Doc. No. 57) exhibit 1, at 206-210, 220, 237-239. Dr. James T. Barnett, plaintiff's treating physician since 1993, agreed that from 1993 to the present, if the plaintiff had returned to an underground coal mining environment, it would have presented a substantial risk of a serious injury to him. *Id.,* exhibit 2, at 51. Dr. Barnett further testified that he had never recommended to the defendants that they return the plaintiff to underground coal mining work or try to accommodate him in some way so that he could return to such work or a supervisory position. *Id.* at 50.[7] Moreover, the plaintiff testified in his deposition that:

> Well, even with the medication, the pain never stops; it's always there. All doctors use a scale from one to ten on pain. At worse times, it would be ten. The best times it ever gets is probably four or five, and that's with medication. It is aggravated more if I do a lot of activity; it aggravates the pain and makes it worse, increases the pain level. The harder the activity, the more the pain increases. If I try to do any real heavy lifting, you know, the pain increases. If I do a lot of activity today, I pay for it tomorrow, you know. I'm going to be hurting real bad tomorrow. I have learned to understand what I can do today, so that I can do tomorrow.

---

[7] Dr. Barnett testified that he wrote in a note dated December 10, 1996, that the plaintiff was restricted to sedentary work. Movant's initial submission (Doc. No. 57) exhibit 6, at 48. However, this information was not before the defendants in 1994 or 1995 when the plaintiff first requested to return to work at JWR, nor is it clear that the defendants ever specifically received this information. Moreover, even if the defendants were aware of the note in 1996, Dr. Barnett's opinion does not appear to be the result of a changed physical condition on the part of the plaintiff, such as an improvement that would now allow the plaintiff to perform gainful activity. To be sure, the plaintiff no where argues in his memorandum that he has experienced some sort of medical improvement such that he is now able to perform gainful activity. In fact, the plaintiff testified in his deposition that he continues to be covered under the long-term disability benefits plan and receive benefits as long as he is "permanently and totally disabled from performing any reasonable occupation," *id.,* exhibit 1, at 110; and the vocational expert hired by the plaintiff in the worker's compensation case opined that the plaintiff's condition was unlikely to change in the future.

17

*Id.*, exhibit 1, at 45.

Based upon all of the foregoing, the court concludes, first, that having offered no explanation by which his inconsistent positions may be reconciled, Mr. Layne is now estopped to claim that he is a "qualified individual" with a disability under the ADA, and, second, that having offered no evidence to create a genuine issue of material fact regarding whether he is a "qualified individual," he cannot establish a necessary element of his claim. In either case, the defendants' motion for summary judgment is due to be granted in its entirety.

A separate order consistent with this opinion will be entered contemporaneously herewith.

Done, this 17th of November, 1999.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE